IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MUHAMMAD RAFIQUE<br>    Plaintiff, | § § § | |
| v. | § | CIVIL ACTION NO. 4:06-CV-645-Y |
| CITY OF FORT WORTH and REX JOHNSON,<br>    Defendants. | § § § § | |

**ORDER DENYING MOTION TO DISMISS FOR LACK OF JURISDICTION
AND GRANTING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS**

Pending before the Court is defendant Rex Johnson's Motion to Dismiss for Lack of Jurisdiction and Motion for Judgment on the Pleadings on the Issue of Qualified Immunity [doc. # 17], filed January 26, 2007. The Court DENIES the motion to dismiss, but GRANTS in part the motion for judgment on the pleadings.

I. BACKGROUND

Plaintiff Muhammad Rafique is a Pakistani Muslim. He was employed by Defendant, the City of Fort Worth ("the City"), from July 1997 to June 13, 2005. In 1999, Rafique was transferred from the City's water-quality division to the environmental-collection center where he worked as an environmental specialist. His supervisor was defendant Rex Johnson. Problems arose between Johnson and Rafique, which Rafique argues were a result of his religion and national origin. Ultimately, the City fired Johnson on June 13, 2005, after he failed to attend a scheduled environmental-collection drive. Rafique alleges that he did not show up because Johnson gave him incorrect directions to the site and that this stated reason for firing him was pretextual. As a result, Rafique filed suit against the City under Title VII and against Johnson under § 1983. 42 U.S.C.A. § 1983 (West 2003), §§ 2000e-2000h-6 (West 2003 & Supp. 2007). Specifically, Rafique pleaded that "[b]ecause of his nation of origin [Pakistan] and religion [Islam]," he was fired for pretextual

reasons and was "continually subjected by . . . Johnson to disparate treatment and a hostile work environment," which included the following "pattern of practice":

1. being "routinely" criticized regarding his national origin and religion;

2. being denied time off for religious holidays in 1998 and June 2000;

3. being denied time for prayers every Friday during his employment;

4. being denied the use of earned vacation time in June 2000, which would have been used to travel to Mecca;

5. being denied a promotion in 2001 to a position for which he was qualified in favor of a non-Muslim employee;

6. being denied professional training and reimbursement for professional association dues, which were provided to other non-Muslim, non-Pakistani employees;

7. being "required as late as October 2004" to justify payment of professional membership fees;

8. being told that "all bearded people from Pakistan are terrorists" and, on November 7, 2001, being required to shave his beard, which is a dictate of his religion;

9. being "continually" told by Johnson that he would do everything he could to get Rafique transferred or fired, "the latest of which occurred in October 2004," that Rafique did not "fit in,"[1] and disciplining Rafique for "looking 'stealthily' at another employee"; and

10. being "continually" given negative performance evaluations by Johnson.

(Pl.'s Am. Comp. at 2-4; Pl.'s Immunity Reply at 3-4.) After this Court entered a scheduling order to allow consideration of Johnson's qualified-immunity defense and, specifically, to require Rafique to file a particularized reply to Johnson's defense, Johnson filed the instant motion. *See* FED. R. CIV. P. 7(a); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc).

## II. JURISDICTION

First, Johnson argues that this Court has no jurisdiction over Rafique's § 1983 claim because

---

[1] This statement allegedly occurred on October 20, 2004. (Pl.'s Immunity Reply at 3.)

his sole avenue of redress is through a Title VII claim against the City. *See* FED. R. CIV. P. 12(b)(1). Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or cause to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C.A. § 1983. Rather than create substantive rights, § 1983 provides a remedy for the rights that it designates. Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983. *See Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997). Here, Rafique's claim that Johnson violated his rights to equal protection for his religion and national origin provides the underlying constitutional violation.

However, Rafique's claim against Johnson under § 1983 and his claim against the City under Title VII arise out of the same underlying factual allegations. This collision of remedies under Title VII and § 1983 is what Johnson relies on in requesting dismissal for lack of jurisdiction. Johnson posits a 1996 case decided by the United States Court of Appeals for the Fifth Circuit in which that Court held that a plaintiff is precluded from seeking redress for employment discrimination under both Title VII and § 1983 when both are based on the same discriminatory facts. *See Jackson v. City of Atlanta, Tex.*, 73 F.3d 60, 61 (5th Cir. 1996). But the Fifth Circuit earlier held that a public employee could sue his county employer and its individual directors for retaliation:

> Although Title VII supplements and overlaps § 1983, it remains an exclusive remedy when a state or local employer violates only Title VII. When, however, unlawful employment practices encroach, not only on rights created by Title VII, but also on rights that are independent of Title VII, Title VII ceases to be exclusive. At this point, § 1983 and Title VII overlap, providing supplemental remedies.

*Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1576 (5th Cir. 1989). In addressing this conflict, the Fifth Circuit concluded that its earlier decision in *Johnston* controlled and allowed simultaneous causes of action under § 1983 and Title VII based on the same set of factual allegations. *See Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 550 (5th Cir. 1997). Following

*Johnston* and *Southard*, this Court holds that Rafique's Title VII and § 1983 claims are not mutually exclusive even though they are based on the same factual allegations. *See, e.g., Davis v. Dallas Area Rapid Transit*, No. 3:01-CV-2595-M, 2002 WL 172646, at *3-4 (N.D. Tex. Feb. 1, 2002).

### III. JUDGMENT ON THE PLEADINGS

Johnson also asserts that he is entitled to judgment on the pleadings because (1) Rafique failed to plead with sufficient particularity that Johnson violated his constitutional rights or that Johnson's actions were unreasonable and (2) many of Rafique's vague allegations are time-barred. *See* FED. R. CIV. P. 12(c).

#### A. STANDARD OF REVIEW UNDER RULE 12

Although Johnson moves for judgment on the pleadings under Rule 12(c), such a motion is analogous to a Rule 12(b)(6) motion to dismiss for failure to state a cognizable claim. *See DeMuria v. Hawkes*, 328 F.3d 704, 706 n.1 (2$^d$ Cir. 2003). *See generally* FED. R. CIV. P. 12(b)(6), (c). Rule 12 must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court and calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (holding Rule 8(a)'s simplified-pleading standard applies to most civil actions).

"A motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The Court must accept as true all well-pleaded, nonconclusory allegations in the complaint, and must liberally construe the complaint in favor of the plaintiff. *See id.* This Court should not dismiss a complaint for failure to state a claim unless it appears beyond doubt from the face of the plaintiff's pleadings that he can prove no set of facts in support of his claims that would

entitle him to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Garrett v. Commonwealth Mortgage Corp.*, 938 F.2d 592, 594 (5th Cir. 1991); *Kaiser*, 677 F.2d at 1050. The plaintiff, however, must plead specific facts, not mere conclusory allegations, to avoid dismissal. *Schultea*, 47 F.3d at 1431; *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992). Indeed, the heightened pleading requirements in qualified-immunity cases dictate that a plaintiff rest his complaint on more than conclusions alone and plead his case with precision and specificity. *See Nunez v. Simms*, 341 F.3d 385, 388 (5th Cir. 2003). In other words, he must plead "enough facts to state a claim to relief that is plausible on its face" and his "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 1974 (2007).

## B. STATUTE OF LIMITATIONS

This Court first will address Johnson's limitations argument. In Texas, § 1983 claims are governed by a two-year statute of limitations. *See Flores v. Cameron County, Tex.*, 92 F.3d 258, 271 (5th Cir. 1996). Rafique filed this action September 8, 2006; thus, events that occurred before September 8, 2004, are time-barred. Rafique alleged that the following actions occurred before September 8, 2004:

1. being denied time off for religious holidays;

2. being denied the use of earned vacation time;

3. being denied a promotion; and

4. being required to remove his beard.

Because these claims are outside the limitations time period, they are barred.

Rafique attempts to avoid the limitation bar on his remaining allegations and invokes the continuing-violation theory by adding "routinely," "continually," and like terms to his complaint. (Pl.'s Am. Comp. at 2-4.) Although state law governs the limitations period of a § 1983 action, federal law determines the time at which the action accrues. *See Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). Federal law dictates that the statute of limitations begins to run "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Id.* A plaintiff's awareness consists of two elements: (1) the existence of an injury and (2) a causal connection between the injury and the defendant's conduct. *See id.* The plaintiff need not know that he has a cause of action; he need only know the facts that would ultimately support the cause of action. *See id.* The continuing-violation theory can relieve a plaintiff of showing that all of the defendant's conduct occurred within the limitations period, but only if the plaintiff can show "a series of related acts, one or more of which falls within the limitations period." *Messer v. Meno*, 130 F.3d 130, 134-35 (5th Cir. 1997).

The continuing-violation exception is a creature of equity and exists "[w]here the unlawful employment practice manifests itself over time, rather than as a series of discrete acts." *Abrams v. Baylor Coll. of Med.*, 805 F.2d 528, 532 (5th Cir. 1986); *see also Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003). A plaintiff must show "an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence that gives rise to the cause of action." *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998). Three questions must be answered in determining whether a continuing violation exists:

> 1. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation?
>
> 2. Are the alleged acts recurring, or more in the nature of an isolated work assignment

6

>    or incident?
>
> 3. Does the act have the degree of permanence that should trigger an employee's awareness of and duty to assert his rights?

*See id.* But the continuing-violation theory does not automatically apply in hostile-work-environment cases, and the burden remains on the plaintiff to demonstrate that an organized scheme led to and included the present violation. *See id.* "[W]here a pattern of harassment spreads out over years, and it is evident long before the plaintiff sues that he was a victim of actionable harassment, he can not reach back and base his suit on conduct that occurred outside the statute of limitations." *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999).

Being denied time for prayers every Friday during his employment, denied unspecified professional training, given negative performance evaluations, and disciplined for "looking 'steathily' at another employee" are all discrete and permanent acts that were actionable, if at all, at the time they occurred. *See Huckabay*, 142 F.3d at 240. Rafique does not delineate exactly when these time-specific actions occurred, and this Court cannot assume that they occurred within the limitations period when the majority of Rafique's employment occurred outside such period. Further, the first time these actions occurred should have alerted Rafique that he had suffered an injury.

Rafique also alleges that, "as late as October 2004," he was required to justify payment of professional membership fees[2] and he continually was told that Johnson would do all he could to get Rafique transferred or fired. Although Rafique attempts to bring these allegations within the limitations period by adding the 2004 language, once again Rafique should have been aware that he

---

[2]Johnson also persuasively argues that having to justify expenses does not amount to an adverse employment action and, thus, is not actionable. (Def.'s Supp. to Mot. for J. at 2.)

7

was injured the first time these actions occurred. Rafique cannot continue to suffer the same alleged violation and wait to assert his rights under the guise of a continuing-violation theory. Further, Rafique fails to pinpoint exactly when any of these actions occurred, and this Court cannot assume that they did, indeed, occur between September 8, 2004, and June 13, 2005. *See generally Webb v. Cardiothoracic Surgery Assocs.*, 139 F.3d 532, 537 (5th Cir. 1998) (explaining that, under the continuing-violation doctrine, plaintiff must show a series of acts, one or more of which fall within the limitations period). Rafique's pleadings are too vague as to time and number of occurrences to survive Johnson's motion for judgment.

This rationale also applies to Rafique's claims that he was "routinely" criticized and told that "all bearded people from Pakistan are terrorists." None of these statements is afforded chronological specificity, so there is no allegation that any of these instances occurred within the limitations period.[3] Although this Court, under *Schultea*, required Rafique to state with specificity the factual support for his claims,[4] he has failed to point to any dates upon which the alleged conduct occurred. Thus, they are time-barred. *See generally Majka v. City of Chicago*, No. 93-C-6213, 1995 WL 654026, at *4-5 (N.D. Ill. Nov. 6, 1995) (holding violations occurring at beginning of employment would have put reasonable person on notice of discrimination so as to trigger limitations period).

C. PARTICULARITY OF ALLEGATIONS

Johnson also asserts that Rafique's remaining claim—that he was fired illegally for

---

[3]Rafique alleges that a similar statement—that he did not "fit in"—occurred on October 20, 2004, within the limitations period. However, this isolated comment, which is not specifically directed to his religion or national origin, is insufficient to overcome Johnson's motion for judgment. *See, e.g., Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347-48 (5th Cir. 2007).

[4]Even when faced with Johnson's limitations arguments, Rafique failed either to specify any occurrence dates or amend his complaint to add such dates.

8

pretextual reasons—fails because Rafique did not plead with sufficient particularity that Johnson violated his constitutional rights or that Johnson's actions were unreasonable. To state a viable cause of action under § 1983, Rafique must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994). In an employment-discrimination case, a plaintiff need not have alleged a prima-facie case to overcome a Rule 12(b)(6) motion to dismiss. *See Swierkiewicz*, 534 U.S. at 509-10. But the pleaded facts must give the defendant fair notice of the plaintiff's claim and the grounds the claim rest upon. *See id.*

Because in *Swierkiewicz* the complaint detailed the events leading to his termination, provided relevant dates, and included the ages of at least some of the relevant persons involved with his termination, defendant had fair notice of plaintiff's age-discrimination claim. *See Swierkiewicz*, 534 U.S. at 514. Likewise, Rafique has met the requirements of Rule 8(a) on his wrongful-termination claim. His complaint plausibly states the date he was fired, the allegedly pretextual reason for his firing, and the allegedly true reason he was fired (his national origin and religion). Although Johnson argues that liability cannot be imposed on him because the City was the ultimate decision maker in firing Rafique, he has cited no supporting authority for this point,[5] and there are cases that impose employment-discrimination liability on supervisors even when the supervisors did not have ultimate firing authority. *See, e.g., Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 608 (5th Cir. 2007); *Laxton v. Gap Inc.*, 333 F.3d 572, 584 (5th Cir. 2003). Reading the complaint in the light most favorable to Rafique, it can be inferred that he has provided Johnson fair notice of his wrongful-termination claim and the grounds upon which it is based. *See, e.g.,*

---

[5]This is just one example of how poor pleading by counsel for Rafique and Johnson made this case muddier and more difficult to decide than it should have been.

*Swierkiewicz*, 534 U.S. at 514-15; *Cornish v. Lancaster Indep. Sch. Dist.*, No. 3:04-CV-2368-G, 2005 WL 170717, at *2-3 (N.D. Tex. Jan. 24, 2005).

Further, Johnson has not shown his right to judgment on the pleadings regarding his immunity defense. Qualified immunity shields government officials performing discretionary functions from liability "unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). It applies to an official's good-faith performance of his discretionary duties while acting within the scope of his authority. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). Qualified immunity is an affirmative defense. *See id.* Thus, the burden is on Johnson to establish all elements of the defense. *See id.* Johnson has failed to do so. *See, e.g., Espinola v. City of Laredo*, No. L-04-179, 2005 WL 169880, at *4 (S.D. Tex. July 19, 2005). Other than his bare assertion that he performed his discretionary duties in good faith within the scope of his authority, he relies primarily on Rafique's failure to specifically prove his allegations in asserting his right to qualified immunity. The Court will undoubtedly hear more from Johnson on his qualified-immunity defense in the next stage of the lawsuit.

## IV. CONCLUSION

Because Rafique's § 1983 claim against Johnson is not precluded by his Title VII claim against the City, Johnson's motion to dismiss must be denied. Rafique's wrongful-termination claim is sufficiently pleaded to give Johnson notice of the claim; thus, Johnson is not entitled to judgment on this claim. But because Rafique's remaining claims against Johnson have not been specifically

pleaded to have been within the limitation period, they are time-barred.[6] Thus, Johnson is entitled to judgment on the pleadings as to those claims and they are dismissed.

SIGNED September 26, 2007.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[6]Additionally and as stated above, Rafique's claim that Johnson said Rafique did not "fit in," which is arguably within the limtations period, is insufficiently pleaded to support a hostile-work-environment claim.

11